PUERTO RICO BEDDING MFG. CORP., Plaintiff and Appellant, *v.* ERNESTO A. HERGER, d/b/a SUPER DISCOUNT HOUSE, Defendant; SEALY MATTRESS COMPANY OF PUERTO RICO, INC., Intervener and Appellee.

No. R-64-74.     Decided December 4, 1964.

*Leopoldo C. Delucca* for appellant. *O'Neill & Borges* for intervener.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

The Puerto Rico Bedding Mfg. Corp., filed an action of debt against Ernesto A. Herger, doing business under the name of "Super Discount House." In order to secure the effectiveness of the judgment it attached 13 bed frames, 22 mattresses, and 32 box springs with a total value of $1,274.50.

The Sealy Mattress Company of Puerto Rico, Inc., intervened in the action alleging that the property attached was its property, or that it had a credit which had preference over that of plaintiff since debtor Herger had not paid the selling price of the properties.

There was no controversy on the facts. The goods attached had been sold by the intervener to Herger, in current account, and the latter had them in his possession and had not paid the price. Therefore, the parties prayed the court to render judgment passing upon the only issue involved, to wit: whether intervener Sealy Mattress Company of Puerto Rico, Inc., was, as it alleged, the owner of the property attached or whether it had a credit which had preference over that of the attaching creditor.

The Superior Court rendered summary judgment sustaining the petition for intervention and ordering the Puerto Rico Bedding Mfg. Corp. to deliver to intervener Sealy Mattress Co. of P.R. the property attached, otherwise to pay its value. It applied to the facts of the case the provisions of § 1822 of the Civil Code (31 L.P.R.A. § 5192) on preference of credits.

Appellant maintains that since the sale made by Sealy Mattress Co. of Puerto Rico to Ernesto Herger was a commercial sale, the preference of credits over the goods sold is regulated exclusively by § 258 of the Code of Commerce which provides:

"During the time the articles sold are in the possession of the vendor, even though they be in the capacity of deposit, he

shall have preference over any other creditor to obtain the payment of the price with the interest arising from the delay."

Appellant further contends that the vendor forfeited its preference upon delivering the property to purchaser Herger. It contends further that the credits referred to in § 1822 of the Civil Code are civil rather than commercial, and that since the price of the personal property as a result of a commercial sale is not included therein, the courts are without power to include it in the law, pursuant to the provisions of § 1825 of the Civil Code, as construed in *Pierazzi* v. *Molini*, 26 P.R.R. 247 (1918).

It is well to point out in the first place that Sealy Mattress Co. of Puerto Rico, through intervention, could litigate its right to be paid its credit in preference to that of the creditor in the main action, *Hernández* v. *District Court*, 34 P.R.R. 652 (1925); *Trueba* v. *Zalduondo*, 34 P.R.R. 713 (1925).

The Code of Commerce, unlike the Civil Code, does not regulate the preference of credits in its entirety. It deals with some specific cases, as for example that provided in § 258. The preference therein granted to the vendor of articles depends on whether the articles are still in possession of the vendor, even though in the capacity of deposit. However, this does not mean that after the guarantee (pledge or collateral) granted to the vendor has disappeared by reason of the fact that the articles sold have passed into the hands of the purchaser, the former is relegated in the order of preference to collect the selling price as respects other common creditors of the debtor, including, naturally, the first one who levies an attachment on the properties.

The Code of Commerce does not establish, as already stated, an order of preference among the different credits, nor does it deal as a whole with the contractual obligations of the sale although the commercial contract is par excellence

a contract of sale. In fact, the Code of Commerce did not have to consider the details of those general principles of law already consecrated in the positive law, particularly since it refers to it in providing in § 2 thereof (10 L.P.R.A. § 1002):

"Commercial transactions, be they consummated by merchants or not, whether they are specified in this Code or not shall be governed by the provisions contained in the same; in the absence of such provisions, by the commercial customs generally observed in each place; and in the absence of both, by those of the common law.

"Commercial transactions shall be considered those enumerated in this Code and any others of a similar character."

The Code of Commerce also refers to the common law (Civil Code) as supplementary source of that respect or to the rules governing commercial contracts, in providing in § 81 thereof (10 L.P.R.A. § 1301) the following:

"Commercial contracts in so far as the requisites thereof are concerned, the modification, exception, interpretation, and extinction thereof, and the capacity of the contractors, shall be governed, in all that is not expressly established in this Code or in special laws, by the general rules of common law."

Where the properties object of a commercial sale have passed into the hands of the purchaser therefore rendering § 258 of the Code of Commerce inapplicable, to which other sources should we resort in order to determine the preference and concurrence of credits against the debtor purchaser of such properties? Certainly it is not to the Code of Commerce itself, since it is silent on the matter. The preference claimed by the attaching plaintiff in this case flows from the attachment itself. There is no question that among common creditors the first one who attaches has preference over the others, but such preference does not go beyond the right which the debtor may have over the prop-

erty attached.[1] The owners of the credits for the selling price are, in a way, dominion creditors. Thus, we have held that the mere levy of an attachment at the instance of a common creditor is not sufficient to place the attached property beyond the operation of § 1822 of the Civil Code,[2] under which preference, in connection with certain property of the debtor, is given to creditors for the purchase price of the attached property. *González* v. *Alonso*, 33 P.R.R. 66 (1924). The provisions of the Civil Code on concurrence and preference of credits, insofar as they supplement the Code of Commerce, are the source to which resort must be had, and they apply in situations such as that in the present case in which the controversy over the preference of the credit arises as a consequence of a commercial contract of sale. See *Heirs of Garriga* v. *O'Meara & Co.*, 28 P.R.R. 332 (1920).

Commenting on § 340 of the Spanish Code of Commerce, counterpart of our § 258, Gay de Motellá says:[3] Where the price is determined in the contract, or the procedure to determine the same is provided therein, the payment thereof becomes a right of preferred credit for the vendor, which right is exercised, in the first place, by the revendication against any other creditor of the purchaser who may seek to exercise any right over the thing sold, with the exception of the credit resulting from the repair or construction of

---

[1] *Commercial Credit Co.* v. *Soto*, 41 P.R.R. 406, 407 (1930); *Pérez* v. *Claudio*, 48 P.R.R. 559 (1935).

[2] Section 1822 of the Civil Code provides:

"With regard to specified personal property of the debtor, the following are preferred:

1. Credits for the construction, repair, preservation, or for the amount of the sale of personal property which may be in the possession of the debtor to the extent of the value of the same.

2. .    .    .    .    .    .    .    .

3. .    .    .    .    .    .    .    . "

[3] III-1 Gay de Montellá, *Código de Comercio* 206.

the same object, a point which the Code of Commerce has overlooked and which is regulated in the Civil Code (§ 1600)."

■ It should be noted that the Code of Commerce in § 258 is silent as to the credits for construction, repair, and conservation, which unquestionably have preference, pursuant to § 1822 of the Civil Code, over the credits for the amount of the sale. It is evident that the Code of Commerce has left to the Civil Code the regulation of the concurrence and preference of credits.

■ The fear pointed out by appellant that one who buys articles from a purchaser who has not paid the price thereof runs the risk of forfeiting them if § 1822 of the Civil Code is applied, is unfounded since according to subdivision 1 of that section in order that the credits for the selling price may have preference, the personal property must be in the possession of the debtor. If it is not because it has been sold to other persons, the credits for the selling price no longer have preference over the property. That is to say, the Civil Code by the preference of credits gives vendor the right to revendicate the property against the debtor whenever the property is in his possession, but not when it has lawfully passed into the hands of third persons. We have already held in *Benítez* v. *Borinquen Trading Corporation*, 33 P.R.R. 481 (1924), that the vendor of personal property has no right to attach, invoking the preference referred to in § 1822 of the Civil Code, the properties sold where the purchaser in turn sold them to another person and the latter has them in his possession, even assuming that he had not paid the price in full.

The fourth error assigned by appellant is without merit. The judgment rendered by the Superior Court ordering the delivery of the properties attached to the intervener, otherwise to pay the value thereof, is correct.

For the reasons stated, the judgment will be affirmed.